UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>LANTANA-FOUNTAINS, LLC, an Oregon limited liability company; 1280 N. LAUREL AVENUE, LLC, a California limited liability company; 3901 TILDEN AVENUE, L.P., a California limited partnership; 12815 PACIFIC AVENUE, L.P., a California limited partnership; 12421 PACIFIC AVENUE, L.P., a California limited partnership; SPRIESTSMA LANTANA, LLC, an Oregon limited liability company; WATHEY-LANTANA, LLC, an Oregon limited liability company; CRAMER INVESTMENT GROUP-LANTANA, LLC, an Oregon limited liability company; NOEKER LANTANA, LLC, an Oregon limited liability company; PFS XVIII, LLC, an Oregon limited liability company,<br><br>　　　　Defendants. | 2:10-CV-01303-PMP-LRL<br><br>ORDER FOR<br>APPOINTMENT OF RECEIVER |

This matter came before the court on the application for appointment of a receiver filed by Plaintiff Federal Home Loan Mortgage Corporation ("Freddie Mac"). The court conducted a hearing pursuant to Rule 66-2, D. Nev. L.R., preceded by ten days' notice to the parties sought to be subjected to receivership and to all known creditors. The court finds as follows:

///

1. Freddie Mac is the holder of two promissory notes, the payment and performance of which is secured by deeds of trust encumbering the property located at 6501 West Charleston Boulevard and 1200 S. Torrey Pines Drive, Las Vegas, Nevada, legally described as follows:

PARCEL I:

GOVERNMENT LOT SEVEN (7) OF SECTION 2, TOWNSHIP 21 SOUTH, RANGE 60 EAST, M.D.B. & M.

EXCEPTING THEREFROM THE INTEREST IN AND TO THE NORTH FIFTY (50.00) FEET AS CONVEYED TO COUNTY OF CLARK FOR ROAD PURPOSES BY DEED RECORDED NOVEMBER 25, 1974 IN BOOK 476 AS DOCUMENT NO. 435894, CLARK COUNTY, NEVADA RECORDS.

PARCEL II:

GOVERNMENT LOT SEVENTEEN (17) OF SECTION 2, TOWNSHIP 21 SOUTH, RANGE 60 EAST, M.D.B. & M.

EXCEPTING THEREFROM THE WEST THIRTY (30.00) FEET; TOGETHER WITH A SPANDREL AREA IN THE NORTHEAST CORNER OF THE INTERSECTION OF REDWOOD STREET AND DEL REY AVENUE, BOUNDED AS FOLLOWS:

ON THE WEST BY THE EAST LINE OF THE WEST THIRTY (30.00) FEET THEREOF;
ON THE SOUTH BY THE NORTH LINE OF THE SOUTH THIRTY (30.00) FEET THEREOF;
AND ON THE NORTHEAST BY THE ARC OF A CURVE CONCAVE SOUTHWESTERLY, HAVING A RADIUS OF FIFTEEN (15.00) FEET AND BEING TANGENT TO THE EAST LINE OF SAID WEST THIRTY (30.00) FEET, AS CONVEYED TO THE COUNTY OF CLARK FOR ROAD PURPOSES BY DEED RECORDED JULY 10, 1979 IN BOOK 1083 AS DOCUMENT NO. 1042992 OF OFFICIAL RECORDS.

PARCEL III:

GOVERNMENT LOT EIGHTEEN (18) OF SECTION 2, TOWNSHIP 21 SOUTH, RANGE 60 EAST, M.D.B. & M. EXCEPTING THEREFROM THE SOUTH THIRTY (30.00) FEET AS CONVEYED TO THE COUNTY OF CLARK FOR ROAD PURPOSES BY DEED RECORDED JULY 10, 1979 IN BOOK 1083 AS DOCUMENT NO. 1042992 OF OFFICIAL RECORDS.

1     PARCEL IV:

2     A NON-EXCLUSIVE DRAINAGE EASEMENT AS SET FORTH IN THAT CERTAIN "DECLARATION OF DRAINAGE EASEMENT" RECORDED FEBRUARY 9, 2000, IN BOOK 20000209 AS DOCUMENT NO. 01167, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA, AS APPURTENANT TO PARCELS I-A, I-B AND I-C HEREINABOVE.

6     PARCELS I, II, AND III ARE MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF GOVERNMENT LOT SEVENTEEN (17) IN SECTION 2, TOWNSHIP 21 SOUTH, RANGE 60 EAST, M.D.B. & M., SAID POINT BEING THE CENTERLINE INTERSECTION OF DEL RAY AVENUE AND REDWOOD STREET;
THENCE ALONG THE CENTERLINE OF DEL RAY AVENUE, NORTH 88°53'55" EAST 659.13 FEET;
THENCE NORTH 03000'21" WEST 30.02 FEET TO A POINT ON THE NORTHERLY RIGHT OF WAY LINE OF DEL RAY AVENUE, SAID POINT BEING THE TRUE POINT OF BEGINNING;
THENCE ALONG SAID NORTHERLY RIGHT OF WAY LINE, SOUTH 88°53'55" WEST 614.52 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 15.00 FEET;
THENCE WESTERLY, NORTHWESTERLY AND NORTHERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 88°12'27" AN ARC DISTANCE OF 23.09 FEET TO A POINT ON THE EASTERLY RIGHT OF WAY LINE OF REDWOOD STREET;
THENCE ALONG SAID EASTERLY RIGHT OF WAY LINE, NORTH 02°53'38" WEST 637.10 FEET;
THENCE LEAVING SAID EASTERLY RIGHT OF WAY LINE, NORTH 88°47'27" EAST 298.87 FEET;
THENCE NORTH 02°56'59" WEST 624.26 FEET TO A POINT ON THE SOUTHERLY RIGHT OF WAY LINE OF CHARLESTON BOULEVARD;
THENCE ALONG SAID SOUTHERLY RIGHT OF WAY LINE, NORTH 89°29'19" EAST 328.41 FEET;
THENCE LEAVING SAID SOUTHERLY RIGHT OF WAY LINE, SOUTH 03°00'21" EAST 1,273.14 FEET TO THE POINT OF BEGINNING.
(APN 163-02-104-004)

("Charleston Parcels"); and:

PARCEL I:

GOVERNMENT LOT NINETEEN (19) IN SECTION 2, TOWNSHIP

3

1    21 SOUTH, RANGE 60 EAST, M.D.B. & M.

2    EXCEPTING THEREFROM THAT PORTION AS CONVEYED TO CLARK COUNTY BY DEED RECORDED JULY 10, 1979, IN BOOK 1083 AS DOCUMENT NO. 104992 OF OFFICIAL RECORDS.

PARCEL II:

GOVERNMENT LOT TWENTY (20) IN SECTION 2, TOWNSHIP 21 SOUTH, RANGE 60 EAST, M.D.B. & M.

EXCEPTING THEREFROM:

THE INTEREST IN AND TO THE NORTH 30.00 FEET AND EAST 40.00 FEET AND THE SOUTH THIRTY FEET TOGETHER WITH THAT SPANDREL AREA DESCRIBED BELOW AS CONVEYED TO THE COUNTY OF CLARK FOR ROAD PURPOSES BY DEED RECORDED JULY 7, 1977 IN BOOK 760 AS DOCUMENT NO. 719160 AND RE-RECORDED AUGUST 3, 1977 IN BOOK 771 AS DOCUMENT NO. 730573 OF OFFICIAL RECORDS.

EXCEPTING THEREFROM A SPANDREL AREA IN THE NORTHEAST CORNER THEREOF, BEING THE SOUTHWEST CORNER INTERSECTION OF HOLMBY AVENUE AND TORREY PINES DRIVE, BOUNDED AS FOLLOWS:

ON THE NORTH SIDE OF THE SOUTH LINE OF THE NORTH 30.00 FEET, ON THE EAST SIDE BY THE WEST LINE OF THE EAST 40.00 FEET AND ON THE SOUTHWESTERLY SIDE BY THE ARC OF A CURVE CONCAVE TO THE SOUTHWEST HAVING A RADIUS OF 20.00 FEET, THAT IS TANGENT TO THE SOUTH LINE OF SAID NORTH 30.00 FEET AND TANGENT TO THE WEST LINE OF SAID EAST 40.00 FEET;

ALSO TOGETHER WITH A SPANDREL AREA IN THE SOUTHEAST CORNER THEREOF BEING THE NORTHWEST CORNER OF THE INTERSECTION OF TORREY PINES DRIVE AND DEL RAY AVENUE, BOUNDED AS FOLLOWS:

ON THE EAST SIDE BY THE WEST LINE OF THE EAST 40.00 FEET, ON THE SOUTH SIDE BY THE NORTH LINE OF THE SOUTH 30.00 FEET AND ON THE NORTHEASTERLY SIDE BY THE ARC OF A CURVE CONCAVE TO THE NORTHEAST HAVING A RADIUS OF 20.00 FEET THAT IS TANGENT TO THE WEST LINE OF SAID EAST 40.00 FEET AND TANGENT TO

PARCELS I AND II ARE MORE PARTICULARLY DESCRIBED AS FOLLOWS:
BEGINNING AT THE NORTHWEST CORNER OF

GOVERNMENT LOT NINETEEN (19) IN SECTION 2, TOWNSHIP 21 SOUTH, RANGE 60 EAST, M.D.B. & M.;

THENCE NORTH 88°47'27" EAST 617.72 TO A POINT ON THE WESTERLY RIGHT OF WAY LINE OF TORREY PINES DRIVE;

THENCE ALONG SAID WESTERLY RIGHT OF WAY LINE, SOUTH 03°07'08" EAST 633.35 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHWESTERLY AND HAVING A RADIUS OF 20.00 FEET;

THENCE SOUTHERLY, SOUTHWESTERLY AND WESTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 92°01'03" AN ARC DISTANCE OF 32.12 FEET TO A POINT ON THE NORTHERLY RIGHT OF WAY LINE OF DEL RAY AVENUE;

THENCE ALONG SAID NORTHERLY RIGHT OF WAY LINE, SOUTH 88°53'55" WEST 598.33 FEET;

THENCE LEAVING SAID NORTHERLY RIGHT OF WAY LINE, NORTH 30°00'21" WEST 652.86 FEET TO THE POINT OF BEGINNING.
(APN 163-02-104-007)

("Torrey Pines Parcels").[1]

2. The deed of trust encumbering the Charleston Parcels ("Charleston Senior Deed of Trust") secures payment of the principal sum of $18.7 million, together with interest as provided under the terms of the corresponding note ("Charleston Senior Note").

3. The deed of trust encumbering the Torrey Pines Parcels ("Torrey Pines Senior Deed of Trust") secures payment of the principal sum of $12.3 million, together with interest as provided under the terms of the corresponding note ("Torrey Pines Senior Note").

4. Both the Charleston Senior Deed of Trust and the Torrey Pines Senior Deed of Trust include language imposing an assignment of rents from Defendants to the deed

---

[1] Collectively, the Charleston Parcels and the Torrey Pines Parcels are referred to as the "Property."

of trust beneficiary.  Section 3(a) provides:

> Borrower absolutely and unconditionally assigns and transfers to Lender all Rents. It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of a further action on the part of Borrower . . .

See Complaint, Exhibits 3 and 4, Section 3(a) at page 9.

5. Defendants Lantana-Fountains, LLC; Lantana Investors, LLC; 1280 N. Laurel Avenue, LLC; 3901 Tilden Avenue, L.P.; 12815 Pacific Avenue, L.P.; 12421 Pacific Avenue, L.P.; Sprietsma Lantana, LLC; Wathey-Lantana, LLC; Cramer Investment Group-Lantana, LLC; Noecker Lantana, LLC; and PFS XVIII, LLC (collectively, "Lantana TIC") are the makers/obligors on the Charleston Senior Note and Torrey Pines Senior Note and the borrower/trustor under the Charleston Senior Deed of Trust and Torrey Pines Senior Deed of Trust.

6. Lantana TIC consented to appointment of a receiver to collect the assigned rents. The deeds of trust provide:

> [I]f an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgage Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law.

See Complaint, Exhibits 3 and 4, Section 3(d) at page 10.

7. Freddie Mac is entitled to take possession of Property and to

> enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the

6

> making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purpose of enforcing the assignment of Rents pursuant to Section 3(a) . . .

*Id.*

8. In particular, Lantana TIC assigned its residential leases to Freddie Mac. *See Id.* at Section 4 at 11-13.

9. No evidence has been presented that Lantana TIC diverted or removed any rental revenue from the operating expenses and payments under the Loan.

10. The Court finds that GREP Southwest, LLC, d/b/a Greystar ("Greystar") is qualified and ready, willing and able to perform the functions of receiver of the Property and can perform in accordance with the terms of this Order set forth below.

WHEREFORE, the Court concludes and orders as follows:

A. Pursuant to N.R.S. §§ 107.100, 107A.260 and 32.010(6), Freddie Mac is entitled to an appointment of receiver. In particular, the Court holds that the assignor of rents, Lantana TIC, is in default, and that Lantana TIC agreed in signed documents to the appointment of a receiver. It appears likely that the real property may not be sufficient to satisfy the secured obligations under the Charleston Senior Note and the Torrey Pines Senior Note. The occurrence of a default justifies the appointment of a receiver. Consequently, effective _November 10__, 2010, at _10:00_ a.m., Greystar is hereby appointed receiver ("Receiver") of the Property pursuant to the provisions of and governed by Rules 66-1 through 66-10, D.Nev.L.R. Nothing herein shall prohibit or function to preclude Freddie Mac from exercising any other of its cumulative (judicial or non-judicial) remedies. N.R.S. § 107A.300(3).

B. The Receiver shall enter upon and take and maintain full control of the Property, including but not limited to all land, buildings and structures, leases, leasehold interests, fixtures and moveable personal property that is a part of the Property, or is located thereon, plus all accounts, including bank, security deposit and operating

accounts, all rents, prepaid rents, security deposits, and income thereof and insurance and condemnation awards, payments and proceeds (collectively "Rents, Issues and Profits"), whether held or maintained by Lantana TIC or any other person or entity.  In taking control of the Rents, Issues and Profits, the Receiver shall deposit all monies received as Receiver in an account or accounts in a federally insured banking institution within this state, such account(s) to relate solely to the Property and not to be commingled with other funds (including security deposits), and no withdrawals shall be made thereafter, except as directed herein, by this Court or on a draft or check signed by the Receiver, and the Receiver shall furnish Lantana TIC and Lantana TIC's attorney(s) with a photocopy of the monthly statements received from said banking depository.  The Receiver shall have all the customary and normal powers accorded a receiver subject to those limitations otherwise described in this Order.  Neither Freddie Mac nor the Receiver shall be liable for any obligations of Lantana TIC relating to the Property that arose prior to the date and time of entry of this Order.

   C. Until further Court order, the Receiver shall hold and maintain the Property in good condition and repair, reasonable wear and tear excepted, and shall collect the Rents, Issues and Profits, the same to be held and disbursed pursuant to the terms of this Order.

   D. Lantana TIC shall immediately deliver to the Receiver and the Receiver shall collect and maintain the following documents, records, personal property and information, except and unless where Lantana TIC has already done so, and where the Receiver has already received the same:

    1. A balance sheet, statement of income and expenses and a statement of changes in financial position of Lantana TIC for the most recent fiscal year;

    2. A quarterly or year to date income and expense statement for the Property;

3. A monthly property management report for the Property showing the number of inquiries made and rental applications received from tenants or prospective tenants and deposits received from tenants;

4. A rent schedule showing the name of each tenant, address/space occupied, lease expiration date, rent payable for the current month, the date through which rent has been paid, and the amount of rent per periodic rental;

5. Complete and accurate books of account and records adequate to ascertain operational costs and expenses;

6. Copies of all written contracts, leases, and other instruments, which affect the Property, tenant files, lease files, credit reports, marketing materials, service contracts, utility account and billing information, insurance contracts/binders, licenses and correspondence;

7. Intangible personal property, including but not limited to, computer files and records, rights to continued use of telephone numbers, internet website domain names, trademarks, and trade dress;

8. Ownership and title to all security and other deposits, however held and wherever located;

9. An accounting of all security deposits held pursuant to leases, including bank records, account numbers, and a ledger of deposits with records of the depositor/tenant for whose benefit the deposit was made;

10. A separate certification by an individual having authority to bind Lantana TIC as to the accuracy and thoroughness of records and information provided;

11. All further information necessary and appropriate for the Receiver to conduct an audit of books and records, either personally or through an independent certified public accountant; and

12. Tangible personal property reasonable and necessary for a seamless

transition of control by the Receiver, including, without limitation, all keys, security codes, gate access, office supplies, office furnishings, computer hardware and software, telephones or other communication equipment, machinery, tools, equipment and supplies currently used to operate and maintain the Property.

E. As necessary, the Receiver may hire, manage, terminate and supervise, any and all property management personnel of Lantana TIC or similar independent contractors of Lantana TIC. The Receiver may retain the property management services of Greystar Management Service, L.P. The receiver may retain the services of Nevada licensed counsel at market rate to bring summary eviction actions. All other engagements of professionals shall be in accordance with paragraph DD below.

F. The Receiver is authorized and directed to demand, collect and receive from the tenants of the Property ("Tenants") or any other person liable therefor, all rents, utilities, obligations, deposits or maintenance fees now due and unpaid or hereafter becoming due.

G. The Receiver shall confirm and provide notice to the Tenants of the assignment of rents provisions of the Charleston Senior Deed of Trust and the Torrey Pines Senior Deed of Trust and of the requirement that Tenants of the Property pay the Receiver directly. The Receiver shall deliver a copy of this Order and the form of notice provided by N.R.S. § 107A.290 to the Tenants and also post a copy in a conspicuous location in the leasing office. By receipt of such notice, Tenants are instructed by this court to attorn to the Receiver and pay over to the Receiver all rents, utilities, obligations, deposits and fees now due and unpaid, or which may hereafter become due.

H. The Tenants or other persons now or hereafter occupying any part or parts of the Property shall, for as long as Receiver is in control of the Property pursuant to this Order, make all payments under their leases or arising out of their occupancy or use of the Property, including but not limited to payments now due or past due and those that

come due hereafter, directly to the Receiver or the Receiver's representative(s), such payments shall constitute pro tanto (dollar for dollar) discharge of said persons' payment obligations under the leases or other use or occupancy arrangements.

  I. Lantana TIC and all persons acting under the control or authority of Lantana TIC or in concert or participation with Lantana TIC, are hereby prohibited from (1) collecting any rents, utilities, obligations, deposits or maintenance fees for the Property, (2) terminating or causing to be terminated, any license, insurance policies, permit, lease contract or agreement relating to the Property and (3) interfering in any manner with the Property or the Receiver's possession of the Property.  The Tenants and other persons liable for the rents, utilities, obligations, deposits or maintenance fees are hereby enjoined and restrained from paying any rent, utility, obligation, deposit or fee to Lantana TIC, or its agents, servants, employees, officers, directors, principals, shareholders, attorneys and all persons acting under the control or authority of Lantana TIC or in concert or participation with Lantana TIC, or to any other person other than the Receiver, or its duly designated agent. Lantana TIC shall have no control over, or authority to operate Lantana TIC's business at the Property. Lantana TIC shall be allowed reasonable access, with escort by the Receiver, to the Property upon providing 24 hours written notice to the Receiver.

  J. The Receiver is authorized to borrow funds or accept an advance thereof from Freddie Mac on reasonable terms to be negotiated by and between the Receiver and Freddie Mac but only if the Receiver determines that it possesses insufficient funds from the rental revenue, such funds to be used, if necessary, for the operation and maintenance of the Property, or for establishing and/or continuing utility services to the Property.  The Receiver shall not undertake any borrowings, incur any other secured obligations, or suffer or permit any liens or encumbrances on the Property unless authorized by Freddie Mac and unless such borrowings or obligations are necessary, in the judgment of the

Receiver. Any indebtedness incurred by the Receiver under this paragraph shall be a lien against the Property prior to all rights, title, interests or claims of any other person (including the liens imposed by reason of the Charleston Senior Deed of Trust and Torrey Pines Senior Deed of Trust). In the event of a cure, payoff, redemption, or reinstatement of the Charleston Senior Deed of Trust and the Torrey Pines Senior Deed of Trust, the additional borrowing and indebtedness authorized by this paragraph shall be deemed part of the indebtedness owed by Lantana TIC to Freddie Mac under the Charleston Senior Note, Torrey Pines Senior Note, Charleston Senior Deed of Trust and Torrey Pines Senior Deed of Trust.

K. The Receiver shall, within a reasonable period of time, repay from the Rents, Issues and Profits collected or received, all funds loaned or advanced pursuant to this Order. Such loans shall constitute an advance of principal on the loan from Freddie Mac to Lantana TIC. Such advances shall not, however, be included in any claim that Freddie Mac may have against any Guarantors if any.

L. The Receiver shall pay all reasonable and necessary expenses of operation including maintenance and repairs to the Property, taxes and other obligations (if not otherwise exempt), utilities, and other publicly necessary services, all such payments to be made from Rents, Issues and Profits collected or received. Unless deemed necessary by the Receiver to preserve or maintain the Property, the Receiver shall not, without prior approval of Freddie Mac or the Court, pay or agree to pay for expenses of the Property incurred by Lantana TIC prior to the date of this Order.

M. Any utility company providing service to the Property shall not, without prior order of this Court, discontinue or terminate such service based on the status of payment on an account for the Property maintained by Lantana TIC or agent thereof, the Receiver also shall not be required to make any deposit or advance payment as a condition of receiving utility services; provided that the Receiver shall not request or

accept services if the Receiver knows or believes the assets of the receivership will be insufficient to pay for such services.

N. All Rents, Issues and Profits collected or received by the Receiver shall first be applied to the costs of taking control of and managing the Property and collecting the Rents, Issues and Profits thereof, including, but not limited to, attorneys' fees, the Receiver's fees, premiums on the Receiver's bond, costs of repairs to the Property, premiums on insurance policies, taxes, assessments, amounts due on liens senior to the lien of Freddie Mac, and other charges on the Property, and to the costs of discharging any other obligations of the Receiver.  The Receiver also may draw on the Reserve and Repair Escrow accounts being maintained by Freddie Mac under the loans for the benefit of the Property, such funds to be used to preserve, maintain and repair the Property.

O. The Receiver shall pay insurance premiums to protect the security of Freddie Mac and maintain state and federally required insurance for workers compensation and unemployment.  Lantana TIC shall continue to be named as a named insured or additional insured as its interests may appear in any insurance policy that the Receiver continues or obtains with respect to the Property.  The Receiver shall deduct such sums from the wages and salaries as are required for federal and state withholding of taxes on income.  The Receiver shall not pay any employee benefits unless necessary for the performance of an employee's day-to-day work.

P. The Receiver shall market the Property for lease to potential tenants and may, without further Court Order, negotiate and enter into leases containing reasonable rental terms and conditions as may exist from time to time for similar properties available in Clark County, Nevada. The Receiver also may take such reasonable action, as the Receiver shall deem necessary to enforce, modify or terminate all leases currently in place on the Property and those that may hereafter be made by the Receiver.

Q. The Receiver shall maintain common areas including parking lots, parking

spaces, clubhouse facilities, fences, walls, landscaping, vegetation, exterior and interior paint and wall coverings, flooring, hallways, roofs, and structural components of each building.  The Receiver shall not make any capital improvements or substantial repairs exceeding Ten Thousand Dollars ($10,000.00) for any one repair without prior written consent of Freddie Mac (or its counsel) or prior approval of the court, except in cases of a life/safety emergency or to comply with the implied warranty of habitability as required by N.R.S. § 118A.290.

R. The Receiver shall, upon demand by Freddie Mac, pay all Rents, Issues and Profits of the Property (less a reasonable reserve and amounts paid for expenses authorized in this Order) to Freddie Mac. Freddie Mac's receipt of any payment less than the full amount due shall not constitute a waiver or cure of (1) the defaults, (2) acceleration of the principal balances secured, or (3) any other right granted Freddie Mac under the Charleston Senior Deed of Trust and/or the Torrey Pines Senior Deed of Trust.

S. The Receiver shall, in all respects, comply with the provisions of the Nevada Residential Landlord and Tenant Act. N.R.S. § 118A.010, et seq.

T. The Receiver shall have authority to bring an action, pursuant to N.R.S. § 40.215 et seq., in the name of the Receiver on behalf and for the benefit of Lantana TIC for unpaid rent, for forcible/unlawful detainer and to fully and thoroughly prosecute such claims or compromise the same for the benefit of the receivership estate.

U. No later than the twenty-first (21st) day of each month (or the first business day thereafter if such day falls on a Saturday, Sunday or holiday), the Receiver shall furnish the parties and file with the court monthly accounting of the Rents, Issues and Profits collected or received from the Property and all disbursements made therefrom during the immediately preceding month.

V. No later the forty-five (45) days after the date of this Order, the Receiver shall furnish the parties with a projection of income and expenses necessary for the

operation of the Property and a takeover report, including, but not limited to, information regarding the physical condition of the Property, occupancy, operations and the preliminary plan to address any property issues.

W. Upon Freddie Mac's reasonable request, the Receiver shall make available for examination, inspection and copying, the records, books of account, ledgers and all other business records related to the Property, wherever located and in whatever mode maintained.

X. Pursuant to Rule 66-4, D.Nev.L.R., within sixty (60) days of the date of this Order, the Receiver shall file a verified report and account of the Receiver's administration.

Y. The Receiver shall receive reasonable compensation for the performance of the Receiver's duties.  Unless authorized by the court, the Receiver shall not receive compensation greater than the Receiver obtained when serving as property manager for Lantana TIC.  The Receiver's fee for receivership services shall be the greater of $20 per rented unit per month or 2.5% of gross revenue for a month; plus 6% of any costs of construction as a construction management fee, subject to possible upward adjustment to a maximum of 10%, if permitted by the Court.  The Receiver shall be paid for additional receivership services, as necessary, based upon compensation which may be paid on an interim basis, subject to final approval by the Court.

Z. A hearing shall be held on ___January 18, 2011 __4:00_ p.m., which date is not less than ten days after the filing of the verified report and account.  The Receiver shall provide copies and proof of mailing to all parties and known creditors of the party subject to receivership.  The report and account shall contain, at a minimum:

    1. A summary of the operations;

    2. An inventory of assets with assigned values;

    3. A schedule of all the Receiver's receipts and disbursements;

    4. A list of all known creditors with their addresses and amounts of claims; and

    5. Recommendations for a continuation or discontinuation of the receivership and the reasons therefor.

   AA. The court shall approve or disapprove the Receiver's report and account, make a determination whether the receivership should continue, and fix a date and time for further proceedings for the receipt and consideration of further reports. Ten days' notice shall be required for any hearings on petitions for approval of payments; petitions for confirmation of sales of real or personal property; applications for fees of the Receiver, attorneys, or other professionals; applications for employment of professionals; and application for discharge of the Receiver.

   BB. Thereafter, the Court shall conduct a hearing on the status of the receivership and any necessary modification to this Order or the discontinuation of the effectiveness of this Order, upon ten days notice, but not less than every 120 days after the first interim hearing.

   CC. The Court affirms that Freddie Mac has and holds a perfected and senior security interest in and to the Property, including all personal property and rent receivables, lease benefits, and income from the same.  Except for expenses determined necessary to continue operations, the Receiver is hereby authorized to apply cash receipts to the indebtedness owed to Freddie Mac.  In each interim verified report and account of the Receiver's administration, the Receiver shall simultaneously move for approval of payments to Freddie Mac.

   DD. The Receiver shall be paid compensation in accordance with the stated proposal for engagement attached to Freddie Mac's motion/application for appointment of receiver.  Payments for the Receiver, and any necessary professionals of the Receiver (including accountants and attorneys) shall be paid upon approval in advance and upon

proof that the estate established by the Receiver will not suffer any substantial detriment from the payment of such compensation. All attorneys, accountants and real estate professionals shall first be approved by the Court before such persons shall incur any fees or be entitled to any compensation. Each professional shall first establish their qualifications and the basis for compensation including a description of services to be provided and the benefit conferred to the receivership. Any application for employment of a professional shall state under oath that the applicant has not entered into any agreement, written or oral, express or implied, with any other person concerning the amount of compensation paid or to be paid from the assets of the receivership estate, or any sharing thereof. The Receiver is hereby conferred standing in this action to seek approval of the Receiver's activities; seek instructions; seek clarification, modification, or termination of this Order to limit, explain, magnify, or enlarge the Receiver's power and authority as the circumstances may warrant; and seek a discharge of the Receiver's obligations under this Order.

EE. The Receiver shall post bond or deposit payment into the registry of the court within the next ten days in the sum of $25,000.00.

DATED: November 9, 2010

_____
PHILIP M. PRO
United States District Judge